UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JEFF SIMMONS, ET AL. | * | CIVIL ACTION NO. 2011-00588 |
| VERSUS | * | JUDGE JAMES T. TRIMBLE, JR. |
| THE SABINE RIVER AUTHORITY OF LOUISIANA, ET AL. | * | MAGISTRATE JUDGE KATHLEEN KAY |
| | | JURY DEMANDED |

*********************************************************************

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY AEGIS
TO COMPEL ARBITRATION AND STAY THE LITIGATION**

Respectfully submitted,

/s Andrew L. Plauche, Jr.
_____
PLAUCHÉ MASELLI PARKERSON, L.L.P.
ANDREW L. PLAUCHE, JR. (#11023)
G. BRUCE PARKERSON (#1118)
SCOTT H. MASON (#29329)
701 Poydras Street, Suite 3800
New Orleans, LA  70139
Telephone: (504) 582-1142
Facsimile: (504) 582-1172
COUNSEL FOR ASSOCIATED ELECTRIC
AND GAS INSURANCE SERVICES, LTD.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF THE FACTS AND PROCEDURAL HISTORY .................................... 2

ARGUMENT ...................................................................................................................... 3

I.      The Court Must Compel Arbitration Under the Convention, 9 U.S.C. § 206, and Stay the Litigation ................................................................................................... 3

II.     There is A Strong Presumption in Favor of Arbitrability ....................................... 4

        A.     The Arbitration Clause Is Valid and Applies to this Dispute ..................... 5

        B.     The Arbitration Clause Binds the Plaintiffs ................................................ 7

III.    The Court Should Stay the Litigation Pending Arbitration .................................. 10

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arthur Anderson LLP v. Carlisle*
    556 U.S. 624 (2009)......................................................................................5, 8, 10

*Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret*,
    598 F.2d 1264 (2d Cir. 1979)......................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...............................................................................................4, 6

*Francisco v. Stolt Achievement MT*,
    293 F.3d 270 (5th Cir. 2002) ...............................................................................3, 4, 5

*Freudensprung v. Offshore Technical Services, Inc.*,
    379 F.3d 327 (5th Cir. 2004) ..........................................................................1, 2, 3, 5

*Hellenic Investment Fund, Inc. v. Detention Norske Veritas*,
    464 F.3d 514 (5th Cir. 2006) ......................................................................................9

*Hornbeck Offshore Corp. v. Coastal Carriers Corp.*,
    981 F.2d 752 (5th Cir. 1993) ......................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................................4

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983).........................................................................................................4

*Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*,
    138 F.3d 160 (5th Cir.1998) .......................................................................................6

*Noble  Drilling Services, Inc. v. Certex USA, Inc.*,
    620 F.3d 469 (5th Cir. 2010) ......................................................................................9

*Phillips Petroleum Co. v. Marathon Oil Co.*,
    794 F.2d 1080 (5th Cir.1986) .....................................................................................4

*Rain CII Carbon, LLC v. ConocoPhillips Co.*,
    No. 09-4169, 2009 WL 2599232 (E.D. La. Aug. 17, 2009).........................................6

*Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co.*,
    767 F.2d 1140 (5th Cir. 1985) ...........................................................................3, 4, 6

*Simmons v. Sabine River Authority*,
  No. 11-0588, 2011 WL 4703053 (W.D. La., Oct. 3, 2011) ................................. *Passim*

*Texaco Exploration & Production Co. v.*
  *Amalyde Engineered Products Co.*,
  243 F.3d 906 (5th Cir. 2001) ................................................................................ 1, 10

*Todd v. Steamship Mut. Underwriting Ass'n,*
  601 F.3d 329 (5th Cir. 2010) ................................................................................ 4, 10

*Todd v. Steamship Mut. Underwriting Ass'n*,
  No. 08-1195, 2011 WL 1226464 (E.D. La. Mar. 28, 2011) ....................... 3, 5, 8, 9

### STATE CASES

*Aguillard v. Auction Management Corp.*,
  2004-2804 (La. 6/29/05), 908 So. 2d 1 .................................................................. 5, 9

*Arkel Constructors, Inc. v. Duplantier & Meric, Architects, LLC*,
  2006-1950 (La. App. 1 Cir. 7/25/07), 965 So. 2d 455 .................................................. 9

*Descant v. Administrators of Tulane Education Fund*,
  93-3098 (La. 7/5/94), 639 So. 2d 246 ........................................................................ 7

*Lakeland Anesthesia, Inc. v. United Healthcare, Inc.*,
  2003-1662 (La. App. 4 Cir. 3/17/04), 871 So. 2d 380 .................................................. 9

*Shroyer v. Foster*,
  2001-0385 (La. App. 1 Cir. 3/28/02), 814 So. 2d 83 .................................................... 9

*Snyder v. Belmont Homes, Inc.*,
  2004-0445 (La. App. 1 Cir. 2/16/05) 899 So. 2d 57 .................................................. 6, 9

### DOCKETED CASES

*Ieyoub v. American Tobacco Co.*,
  No. 97-1174 (W.D. La. Sept. 11, 1997) ...................................................................... 7

### FEDERAL STATUTES

9 U.S.C. §§ 1 et seq. ........................................................................................... *Passim*

9 U.S.C. § 206 ............................................................................................................ 1, 3

9 U.S.C. § 208 ............................................................................................................... 4

## PRELIMINARY STATEMENT

Defendant Associated Electric and Gas Insurance Services, Ltd. ("AEGIS") submits this memorandum of law in support of its motion for an order compelling arbitration pursuant to 9 U.S.C. § 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and for a stay of the litigation under 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA").

The insurance policy issued by AEGIS ("the Policy") contains a mandatory arbitration clause requiring that "[a]ny controversy or dispute arising out of or relating to this POLICY . . . . shall be settled by binding arbitration." (Policy, Section IV (R)), Rec. Doc. 1-6, p. 322). Magistrate Judge Kay previously found that "the Policy's arbitration clause clearly 'falls under' the Convention." *Simmons v. Sabine River Auth.*, No. 2:11–cv–0588, 2011 WL 4703053, at *6 (W.D. La. October 3, 2011). In such situations, "[t]he Convention imposes a mandatory obligation upon federal courts to enforce an arbitration agreement falling within its scope unless the agreement is 'null and void, inoperative, or incapable of being performed.'" *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985)). Because plaintiffs can show no basis on which to avoid the arbitration clause, AEGIS's motion to compel should be granted under 9 U.S.C. § 206. Moreover, where, as here, the dispute is referable to arbitration, the court must stay the litigation pursuant to 9 U.S.C. § 3. *See, e.g.*, *Texaco Exploration & Prod. Co., v. Amalyde Engineered Prods. Co.,* 243 F.3d 906, 909 (5th Cir. 2001) (holding that where a valid agreement to arbitrate exists and "the issues raised are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay").

## SUMMARY OF THE FACTS AND PROCEDURAL HISTORY

On February 20, 2002, plaintiffs filed suit against defendants Sabine River Authority of Louisiana, the Louisiana Department of Transportation and Development, Linda Curtis Sparks, Entergy Corporation, Entergy Gulf States, Inc., and Entergy Services, Inc. in the 30th Judicial District Court, Parish of Vernon. (Rec. Doc. 1-1).[1] The Petition alleged that in March 2001, the defendants had "negligently and recklessly" caused the Toledo Bend Dam to release catastrophic floodwaters into the Sabine River Basin.

Thereafter, plaintiffs filed First, Second, Third, Fourth and Fifth Supplemental and Amending Petitions. (Rec. Doc. 1-1 pp. 47-58; 1-2 pp. 70-81; 1-2 pp. 84-96; 13-3 pp. 478-489; 13-5 pp. 533-35). The Fifth Supplemental and Amending Petition named AEGIS and Northfield Insurance Company ("Northfield") as defendants pursuant to Louisiana's Direct Action Statute, La. Rev. Stat. § 22:1261. (Rec. Doc. 13-5 p.533, ¶ 39).

On April 13, 2011, AEGIS timely filed a removal petition in which it asserted that federal question jurisdiction existed because the subject matter of plaintiffs' lawsuit relates to an arbitration agreement that falls under the Convention. (Rec. Doc. 1, pp. 3-6). On April 18, 2011, the U.S. District Court entered a removal order. (Rec. Doc. 6).

On May 9, 2011, plaintiffs filed a motion to remand. (Rec. Doc. 8). Following briefing and oral argument, the Magistrate denied plaintiffs' motion on October 3, 2011. Reasoning that that all four prerequisites for removal set forth in *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) were met, the Magistrate

---

[1] On September 8, 2005, plaintiffs dismissed DOTD from the litigation. (Rec. Doc. 1-4 pp. 219-221).

found that "the arbitration clause at issue 'falls under the Convention'" and that federal jurisdiction was proper.  *Simmons*, 2011 WL 4703053, at *6.

On October 27, 2011, AEGIS requested that plaintiffs agree to stay the litigation pending arbitration and advised plaintiffs it would move for a stay in the absence of an agreement.  (Ex. 1).  Plaintiffs did not consent.

## ARGUMENT

### I.  THE COURT MUST COMPEL ARBITRATION UNDER THE CONVENTION, 9 U.S.C. § 206, AND STAY THE LITIGATION

The Fifth Circuit has interpreted Section 206 of the Convention to require courts to "compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung*, 379 F.3d at 339 (citing *Sedco, Inc.* 767 F.2d at 1145-46).[2] *Accord Todd v. Steamship Mut. Underwriting Ass'n., Ltd*., No. 08–1195, 2011 WL 1226464, at *9 (E.D. La. Mar. 28, 2011) (citing *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 273 (5th Cir. 2002)).  "If these requirements are met, the Convention requires district courts to order arbitration."  *Sedco*, 767 F.2d at 1145-46.  *See also Freudensprung*, 379 F.3d at 341 (noting that "the Convention requires the district court[ ] to order arbitration" unless it finds that the agreement "is null and void, inoperative or incapable of being performed.") (citations omitted).  The Magistrate previously found that "all four *Freudensprung* prerequisites have been met" and that "the Policy's arbitration clause clearly 'falls under the Convention.'" *Simmons*, 2011 WL 4703053, at

---

[2] Pursuant to 9 U.S.C. § 206, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement."

3

\*6-7. To date, plaintiffs have not consented to a stay of the litigation pending arbitration. Accordingly, as set forth below, the court should compel arbitration and stay the litigation.

## II. THERE IS A STRONG PRESUMPTION IN FAVOR OF ARBITRABILITY

Pursuant to the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. [3] The FAA embodies "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Thus, the FAA requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

"As a general rule, whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *Sedco, Inc.* 767 F.2d at 1145. Therefore, "where a contract contains an arbitration clause, there exists a strong presumption that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Phillips Petroleum Co. v. Marathon Oil Co.,* 794 F.2d 1080, 1081 (5th Cir. 1986) (citations omitted). *See also Stolt Achievement Mt,* 293 F.3d at 275, n. 20 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614,

---

[3] The Convention's implementing legislation incorporates the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") to the extent that they do not conflict. *See Todd v. Steamship Mut. Underwriting Ass'n.,* 601 F.3d 329, 332 (5th Cir. 2010) (citing 9 U.S.C. § 208) ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict . . ."). Thus, FAA cases are relevant here.

4

631 (1985)) (recognizing that the federal policy favoring arbitration "applies with special force in the field of international commerce."); *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1, 6 ("The positive law of Louisiana favors arbitration" and noting that this "favorable treatment echoes the [FAA]."). Application of these standards requires the court to compel arbitration and stay the litigation.

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung* 379 F.3d at 339 (5th Cir. 2004). *See also Stolt Achievement Mt,* 293 F.3d at 273 (noting that the Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration"). This analysis is limited to two questions: "whether there is a valid agreement to arbitrate that binds the parties" and (2) "whether the agreement applies to the claims" at issue. *Todd*, 2011 WL 1226464, at *4 (citing *Arthur Anderson LLP v. Carlisle*, 129 S.Ct. 1896 (2009)). These requirements are met here.

### A.      The Arbitration Clause Is Valid and Applies to this Dispute

There can be no legitimate dispute that the arbitration clause is valid, or that it applies to plaintiffs' claims. First, the Magistrate previously found that "the Policy clearly includes a written agreement to arbitrate." *Simmons*, 2011 WL 4703053, at *6. Second, the arbitration clause broadly captures "[a]ny controversy or dispute arising out of or relating to this POLICY, or the breach, termination, or validity thereof." (Rec. Doc. 1-6 p. 322). Plaintiffs' claims, which invoke the AEGIS Policy as the very basis for their direct action against AEGIS, are claims "arising out of or relating to [the AEGIS] Policy" that fall within the scope of the clear and unambiguous language of the arbitration clause. Where as here, there is a valid arbitration clause, "[t]he Federal Arbitration Act leaves no place for the exercise of discretion by a district court, but instead, mandates that district

5

courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Byrd*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3-4).

Moreover, "[t]he Fifth Circuit has noted that the important inquiry in determining whether there is an agreement in writing to arbitrate the dispute is to determine whether the agreement is broad or narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. 09-4169, 2009 WL 2599232, at *2 (E.D. La. Aug. 17, 2009) (citing *Sedco*, 767 F.2d at 1144-45). The "any controversy or dispute" language in the AEGIS Policy is very broad. *See Sedco*, 767 F.2d at 1145 (citing *Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret*, 598 F.2d 1264, 1266 (2d Cir. 1979) (noting that "[i]t is difficult to imagine broader general language than that contained in the charter party's arbitration clause, 'any dispute'"); *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (finding that "arbitration clauses containing the 'any dispute' language" are broad); *Rain,* 2009 WL 2599232, at *2 ("The arbitration agreement between these parties is clearly a broad agreement, covering 'any controversy or claims arising out of or relating to this Agreement.'"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (characterizing as broad an arbitration clause covering "[a]ny dispute, controversy or claim arising out of or in connection with or relating to this Agreement"); *Snyder v. Belmont Homes, Inc.*, 2004-0445 (La. App. 1 Cir. 2/16/05) 899 So. 2d 57, 62 (finding that "any dispute, controversy or claim" language was broad).

Where as here, the language is broad, "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause." *Rain,* 2009 WL 2599232, at *2. *See also Sedco,* 767 F.2d at 1145 ("A court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause,

6

if the clause is 'broad.'").

### B. The Arbitration Clause Binds the Plaintiffs

There also is no credible basis on which plaintiffs can assert that they are not bound by the arbitration clause. On the contrary, applicable law prohibits plaintiffs from simultaneously invoking the AEGIS Policy as a basis for naming AEGIS as a direct action defendant and then refusing to abide by the arbitration clause in that Policy. As noted by Magistrate Judge Kay, litigants invoking the Louisiana Direct Action Statute "may be bound by arbitration agreement" where they seek "relief from an insured's insurer," even if they are non-signatories to that agreement. *Simmons*, 2011 WL 4703053, at *5.

Specifically, the Louisiana Direct Action Statute provides in pertinent part that:

> Any action brought under provisions of this Section <u>shall be subject to all of the lawful conditions of the policy or contract</u> and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

La. Rev. Stat. § 22:1269(C) (emphasis added). The Louisiana Supreme Court has held that "the direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Descant v. Administrators of Tulane Education Fund,* 93-3098 (La. 7/5/94), 639 So. 2d 246, 249. Thus, "plaintiffs are effectively 'stepping into the shoes' of the named insureds." *Simmons*, 2011 WL 4703053 at *6. *Accord Ieyoub v. Am. Tobacco Co.*, No. 97-1174, at 9 (W.D. La. Sept 11, 1997).

7

Therefore, although plaintiffs are not signatories to the AEGIS Policy, in suing under the Direct Action Statute, they stand in the shoes of the insured and are "subject to all of the lawful conditions of the [AEGIS] policy," including the arbitration clause. *See* La. Rev. Stat. § 22:1269(C) ("Any action brought under provisions of this Section shall be subject to all of the lawful conditions of the policy"). *Accord Todd,* 2011 WL 1226464, at *8 (E.D. La. March 28, 2011) (finding that direct action claimant "can be compelled to arbitrate as a non-signatory").

In *Todd*, the court addressed a fact pattern strikingly similar to this one in which an injured party invoked the Direct Action Statute to obtain benefits under an insurance contract. *Id.* at *1. Like plaintiffs here, Todd argued that he never agreed to arbitrate his dispute with the insurer, and therefore, should not be subject to the arbitration agreement between the insurer and its insured. *Id*. at *6. In rejecting this argument and ordering arbitration to proceed, the court reasoned that although Todd was not a party to the insurance policy between the insurer and its insured, he was enforcing the terms of that policy by virtue of the Direct Action Statute, and therefore "merely stands in the shoes of [the insured] and is bound by the terms of its policy with [the Insurer]." *Id*. As in *Todd*, this Court should conclude that even though plaintiffs are not signatories to the AEGIS Policy, they are bound by the arbitration clause pursuant to the direct-benefits estoppel theory because they invoke the Policy as the very basis for asserting direct action claims against AEGIS.

"[T]raditional principles of state law" which "allow a contract to be enforced by or against nonparties to the contract through . . . 'third-party beneficiary theories, waiver and estoppel'" support this conclusion. *See Arthur Anderson LLP*, 129 S.Ct. at 1902

8

(citations omitted). In particular, courts applying Louisiana law consistently have applied the direct-benefits estoppel theory in situations precisely such as this where a party seeks to avoid an arbitration clause in the same contract it otherwise seeks to enforce. *See* Snyder, 899 So. 2d at 62-63 (noting that "numerous courts have found that when a party seeks to enforce the provisions of a contract, that party must accept all the terms of the contract *Lakeland Anesthesia, Inc. v. United Healthcare, Inc.*, 2003-1662 (La. App. 4 Cir. 3/17/04), 871 So. 2d 380, 394-95 (holding that a plaintiff who sues to enforce a contract containing an arbitration contract is estopped from avoiding the arbitration provision in that same agreement) *writs denied*, 876 So. 2d 834 (La. June 25, 2004)); *Shroyer v. Foster*, 2001-0385 (La. App. 1 Cir. 3/28/02), 814 So. 2d 83, 89 ("The party cannot have it both ways; he cannot rely on the contract when it works to its advantage and then repudiate it when it works to his disadvantage."), *superseded by statute on unrelated grounds as stated in Arkel Constructors, Inc. v. Duplantier & Meric, Architects, LLC*, 2006-950 (La. App. 1 Cir. 7/25/07), 965 So. 2d 455, 458); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (finding that direct-benefits estoppel applied where non-signatory party brought suit based upon the agreement containing the arbitration clause);[4] *Noble Drilling Servs, v. Certex USA, Inc.*, 620 F.3d 469, 4790 (5th Cir. 2010) ("A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.")). *See also Todd,* 2011 WL 1226464, at *7

---

[4] State law "concerning the validity, revocability, and enforceability of contracts generally" is applicable to determining whether a contract is binding under the FAA." *Arthur Anderson LLP,* 129 S.Ct. at 1901-02 (2009). However, Louisiana courts look to federal law when interpreting state arbitration law. *Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1.

9

(noting that Fifth Circuit "has adopted the direct-benefits estoppel theory, estopping non-signatory plaintiffs from repudiating the arbitration clauses in contracts which they otherwise seek to enforce.").

Thus, applicable law prohibits plaintiffs from simultaneously invoking the AEGIS Policy as a basis for naming AEGIS as a direct action defendant and then refusing to abide by the arbitration clause in the Policy. Accordingly, the Court should find that there is no basis on which plaintiffs can avoid the arbitration clause.

### III.   THE COURT SHOULD STAY THE LITIGATION PENDING ARBITRATION

Pursuant to 9 USC § 3, AEGIS also is entitled to a stay of the litigation pending arbitration. *See, e.g., Todd v. Steamship Mut. Underwriting Ass'n,* 601 F.3d 329, 332 (5th Cir. 2010) ("The Convention and its implementing legislation do not explicitly authorize staying litigation pending arbitration, and thus parties whose arbitration agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. § 3."). Section 3 mandates that, where as here, a dispute is "referable to arbitration," the court must stay the litigation pending arbitration. *See* 9 U.S.C. § 3 (providing that where a dispute is "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *Arthur Anderson LLP*, 129 S.Ct. at 1898 ("Section 3 of the Federal Arbitration Act (FAA) entitles litigants in federal court to a stay of any action that is 'referable to arbitration.'"); *Texaco Exploration & Prod. Co.,* 243 F3d at 909 (holding that where a valid agreement to arbitrate exists and "the issues raised are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay"); *Todd*, 2011 WL 1226464, at *9 ("As a broad arbitration provision, this Court is required

10

to stay the action and allow the arbitrators to determine whether the dispute falls within the clause."). Accordingly, the Court should stay the litigation.

## **CONCLUSION**

For the foregoing reasons, AEGIS respectfully asks that the Court enter an order compelling arbitration and staying litigation of the captioned action pending arbitration.

Respectfully submitted,

/s Andrew L. Plauche, Jr.
_____
PLAUCHÉ MASELLI PARKERSON, L.L.P.
ANDREW L. PLAUCHE, JR. (#11023)G.
BRUCE PARKERSON (#1118)
SCOTT H. MASON (#29329)
701 Poydras Street, Suite 3800
New Orleans, LA  70139
Telephone: (504) 582-1142
Facsimile: (504) 582-1172
bparkerson@pmpllp.com
smason@pmpllp.com
COUNSEL FOR ASSOCIATED ELECTRIC
AND GAS INSURANCE SERVICES, LTD.

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of November, 2011, I filed the foregoing with the Clerk of Court which will send a notice of electronic filing.

Counsel for Plaintiffs:

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
Post Office Drawer 71
Plaquemines, LA  70765-0071

Scott Webre
Attorney at Law
102 Versailles Blvd., Suite 310
Lafayette, LA  70501

Victor Marcello
Talbot, Carmouche & Marcello
17405 Perkins Road
Baton Rouge, LA  70810

Counsel for Sabine River Authority of Louisiana, Linda Curtis-Sparks, Entergy Corporation, Entergy Gulf States, Inc. and Entergy Services, Inc.:

James Nieset
Matthew Keating
Plauché Smith & Nieset, L.L.C.
P.O. Drawer 1705
1123  Pithon Street
Lake Charles, LA  70602

John F. McDermott
Taylor, Porter, Brooks & Phillips, L.L.P.
8th Floor, Chase Tower South
451 Florida Street
Baton Rouge, LA 70801

Counsel for Northfield Insurance Company:

Tina Kappen
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
9311 Bluebonnet Blvd., Suite A
Baton Rouge, LA  70810

s/ Andrew L. Plauche, Jr.